UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TAMMY S. SPRAGUE, | ) | CASE NO. 3:18CV977 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JEFFREY HELMICK |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| NANCY A. BERRYHILL[1], | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | REPORT AND RECOMMENDATION |
| SECURITY ADMINISTRATION, | ) | OF MAGISTRATE JUDGE |
| | ) | |
| Defendant. | ) | |

Plaintiff Tammy S. Sprague ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, Plaintiff asserts that the administrative law judge ("ALJ") failed to find good reasons for rejecting the work limitations opined by her treating mental health doctor, Dr. Roy. ECF Dkt. #12. For the following reasons, the undersigned recommends that the Court AFFIRM the decision of the ALJ and DISMISS Plaintiff's complaint in its entirety WITH PREJUDICE.

I.      **FACTUAL AND PROCEDURAL HISTORY**

Plaintiff had filed applications for DIB and SSI in December of 2010 alleging disability beginning May 29, 2009. ECF Dkt. #11 at 183. A prior ALJ found that Plaintiff had the severe impairments of depression, anxiety, and personality disorder not otherwise specified (borderline, avoidant, and dependent traits). *Id.* at 184. He ultimately found that Plaintiff was not disabled from May 29, 2009 through the date of his decision, January 29, 2013, as she had the residual functional capacity ("RFC") to perform a full range of work with the nonexertional limitations of simple, routine, tasks, no contact with the general public, work with only one to two coworkers, occasional supervision, and in a routine work setting that had only occasional changes in the work routine. *Id.*

---

[1]On January 20, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

at 186-188. With this RFC, the ALJ found that Plaintiff could perform her past relevant work as an order picker. *Id.* at 190.  Plaintiff filed a request for review of this decision to the Appeals Council, but the Appeals Council denied the request for review on April 7, 2014. *Id.* at 252.

Plaintiff then protectively filed applications for DIB and SSI in May of 2014 alleging disability beginning January 30, 2013 due to bipolar disorder, depression, anxiety, trouble sleeping, mind wonders, allergies, gastroesophageal reflux disease, allergies to bee stings and the sun, and shaking. ECF Dkt. #11 ("Tr.") at 338, 345, 389, 395.[2]  The Social Security Administration ("SSA") denied her applications initially and upon reconsideration.  *Id.* at 259-281.  Plaintiff requested a hearing before an ALJ, and the ALJ held a hearing on October 25, 2016, where Plaintiff was represented by counsel and testified. *Id.* at 130, 281.  A vocational expert ("VE") also testified. *Id.*

On January 13, 2017, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI.  Tr. at 11-28.  Plaintiff appealed that determination to the Appeals Council and the Appeals Council denied her request for review on February 27, 2018.  *Id.* at 1-4

On April 27, 2018, Plaintiff filed the instant suit seeking review of the ALJ's decision.  ECF Dkt. #1.  She filed a merits brief on August 16, 2018 and Defendant filed a merits brief on October 31, 2018. ECF Dkt. #s 12, 15.  Plaintiff filed a reply brief on November 14, 2018.  ECF Dkt. #16.

## II.    RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE

Since Plaintiff's sole claim of error relates to the opinion of her treating mental health provider, Dr. Roy, the undersigned's review of the medical evidence will cover only the evidence relating to her mental health conditions since the new filing period, unless a review of prior records is necessary for background or relevancy purposes.

### A.    MENTAL HEALTH EVIDENCE

The prior ALJ noted that Plaintiff complained of an increase in depression to her primary care physician in July 2009 and she later reported having anxiety in December of 2009.  Tr. at 186-187.

---

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than when the Transcript was compiled.  This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

She was prescribed medications and began seeing Dr. Roy at Coleman Psychiatry in October of 2010 upon being admitted for treatment due to cutting herself. *Id*. at 188. According to the prior ALJ, Dr. Roy diagnosed Plaintiff with mood disorder, not otherwise specified, and assigned her a global assessment of functioning score ("GAF") of 30, indicating serious symptoms. *Id.* The prior ALJ goes on to note in August of 2011, Dr. Roy completed an assessment of Plaintiff's mental RFC and he described Plaintiff as "severely depressed, constricted effect," and as being in a "constant state of worry, mood swings, anxiety," yet stated that she was stable on medications. *Id.* at 189. Dr. Roy had apparently indicated that his office supported Plaintiff's request for disability benefits, but he offered no specifics as to Plaintiff's abilities, limitations or restrictions at that time. *Id.*

In November of 2012, Licensed Social Worker ("LSW") Osbourne and LSIW Supervising Clinical Nurse Specialist Miller of Coleman Psychiatry, performed a diagnostic assessment of Plaintiff after it was reported that her family doctor believed that Plaintiff was not taking her medications correctly. Tr. at 687, 691. Plaintiff reported that she had one job in the last five years and she was let go because she moved too slow and missed too many days. *Id*. at 690. About getting a job, she related that she felt like she was losing her air if she was around one person and she could not breathe. *Id*. She described past abuses, depressed mood, anxiety, traumatic stress, and disturbed reality as she saw shadows. *Id.* at 695-700. Ms. Osbourne and Ms. Miller described Plaintiff as cooperative, well-groomed, over-sedated, avoidant eye contact, pressured speech, flat affect, no self abuse reported, depressed mood, visual hallucinations, logical thought process, and no memory impairment but some attention and concentration issues**.** *Id***.** at 699-701. They believed that she was oversedated and diagnosed her with major depressive disorder that was recurrent and severe with psychotic features, and post-traumatic stress disorder ("PTSD"). *Id*. at 701-702. They recommended individual counseling and psychiatric treatment. *Id.* at 703.

On February 5, 2013, Licensed Practical Nurse ("LPN") Mesker of Coleman Psychiatry had a phone call with Plaintiff in which Plaintiff called about her social security application that was denied. Tr. at 625. On February 12, 2013, Licensed Social Worker ("LSW") Ms. Osbourne of Coleman Counseling met with Plaintiff and noted that Plaintiff was stressed because she was denied social security benefits. *Id.* at 643. She described Plaintiff's demeanor, eye contact, and activity as

-3-

average, and she had a congruent affect, no delusions, self abuse, or homicidal or suicidal ideations, and a logical thought process, with no reported impairment in memory, attention/concentration, or orientation.  *Id.* at 642-644.  This was reported at Plaintiff's February 2, 22012, March 7, 2013, March 13, 2013, April 5, 2013, April 18, 2013, April 19, 2013, November 13, 2013, December 10, 2013, January 8, 2014, February 25, 2014, April 18, 2014, April 29, 2014, May 7, 2014, and August 20, 2014, as well.  *Id*. at 647, 650, 653, 656-657, 659, 662-663, 665-666, 668-669, 671-672, 673-675, 681-682, 684-685, 1292, 1296-1297.  As Plaintiff points out, some treatment notes showed that Plaintiff had an avoidance behavior, was socially withdrawn, had behavioral issues with others, was restless with a flat affect at times, and was pressured and guarded.  *Id*. at 647, 680, 697, 714, 768, 950, 957, 981.  She was also described at times as unkempt and disheveled.  *Id*. at 804, 820, 828, 833, 848, 854.  She was living with her husband who she was separated from, but enjoyed talking to her boyfriend on the phone, spending time with her children and grandchildren, and playing on the computer.  *Id*. at 648.

On October 28, 2013, LSW Osbourne performed another assessment of Plaintiff.  Tr. at 705.  Plaintiff reported that her husband with whom she was living but separated was drinking and she said that he had multiple sclerosis.  *Id*.  They spoke again about her employment history, and she indicated that she had applied online for some jobs and she was going to call about those jobs.  *Id.* at 708.  She described being anxious, depressed and sad, not wanting to be around anyone, and not wanting to get out of bed.  *Id*. at 715.  She described traumatic stress, anger/aggression, and disturbed reality as she saw shadows and heard things.  Id. at 715-716.  Ms. Osbourne described Plaintiff as cooperative, well-groomed, average demeanor, average eye contact and activity, clear speech, depressed mood, congruent affect, no delusions, no self abuse, visual hallucinations, logical thought process, no homicidal or suicidal ideations, and no memory impairment but some attention and concentration issues**.  *Id***. at 717-718.  She believed that Plaintiff was over-sedated and diagnosed her with major depressive disorder that was recurrent and mild, generalized anxiety disorder, and partner relational problems.  *Id*. at 720.  She rated Plaintiff's GAF at 52, indicative of moderate symptoms.  *Id.*  She recommended individual counseling and psychiatric treatment.  *Id.* at 720-721.

-4-

On May 7, 2014, Dr. Roy met with Plaintiff and diagnosed her with bipolar disorder, mixed. Tr. at 1303. Plaintiff reported that she was feeling the same as she was anxious and depressed. Id. She denied mood swings, irritability, paranoia and hallucinations, and she was cooperative with the interview, although her speech was low, with a reactive affect and limited insight and judgment. Id. He found that Plaintiff was alert and oriented, in no acute distress, dressed and groomed casually, and had no suicidal or homicidal ideations. *Id*. Dr. Roy continued Plaintiff's treatment of Lamictal 300 mg once a day, Seroquel 400 mg at night, Paxil 40 mg once a day, and Lorazepam at 1 mg twice a day. *Id.*

Dr. Roy met with Plaintiff on August 20, 2014 for a recheck and noted that Plaintiff reported that she was doing fairly well. Tr. at 1312. She denied symptoms of anxiety, mood swings, irritability, paranoia or hallucinations, but she had problems focusing and concentrating. *Id*. He found that Plaintiff was alert and oriented, in no acute distress, dressed and groomed casually, cooperative, she had a good mood, a reactive affect, she denied suicidal or homicidal ideations, and her insight and judgment were limited. *Id*. He diagnosed Plaintiff with bipolar I disorder, most recent episode mixed and unspecified, and generalized anxiety disorder, and he continued her treatment. *Id.* at 1317-1318.

On November 4, 2014, Dr. Roy completed a mental status questionnaire in which he indicated that he first examined Plaintiff on March 7, 2011 and last saw her on August 20, 2014. Tr. at 1660. He described her appearance as varying from unkempt to well-groomed and found her flow of speech and conversation to be clear. *Id*. He noted that her mood and affect were unremarkable and full. *Id.* He said she had no signs, symptoms, or severe anxiety issues, and she was alert and oriented. *Id.* As to cognitive functioning, such as concentration, memory and fund of information, Dr. Roy wrote that "client reports difficulty with concentration.*" Id.*

A nurse from Coleman Psychiatry completed a form indicating that Plaintiff was able to prepare food, perform household chores, tend to personal hygiene, shop, take public transportation and drive, pay bills and perform hobbies by herself. Tr. at 1662. She further noted that Plaintiff kept her appointments and reported no problems or non-compliance with treatment. *Id.*

November 19, 2014 progress notes from Coleman Psychiatry indicate that Plaintiff saw Nurse Roa for a symptom update and Plaintiff reported no new chronic medical conditions.  Tr. at 2143. Nurse Roa observed that Plaintiff was well-groomed, had an average demeanor and a cooperative behavior, her eye contact and activity were average, her speech was clear, she had a full affect, and no delusions, no reports of self abuse, no hallucinations or suicidal or homicidal ideations, and a logical thought process.  *Id.* at 2143-2144.  Plaintiff reported no impairment in memory, orientation or attention and concentration.  *Id*. at 2144.

Notes from Dr. Roy on the same date indicate that he rechecked Plaintiff and diagnosed her with bipolar disorder and generalized anxiety disorder.  Tr. at 2167.  He noted that Plaintiff reported that she was doing well and she denied symptoms of anxiety, mood swings, irritability, paranoia or hallucinations.  *Id.*  She denied difficulties with her medications.  *Id.*  Dr. Roy observed that Plaintiff was alert and oriented, in no acute distress, and she was dressed and groomed casually.  *Id*.  He found that she was cooperative, was in a good mood, and her affect was reactive.  *Id*.  She denied suicidal or homicidal ideations and he found her insight and judgment to be fair.  *Id*.  Dr. Roy continued Plaintiff's medications.  *Id.*

Dr. Roy had a recheck with Plaintiff on February 18, 2015.  Tr. at 2173.  He diagnosed her with bipolar disorder and generalized anxiety disorder.  *Id*.  He noted that Plaintiff reported that she was doing fairly well and she denied symptoms of anxiety, mood swings, irritability, paranoia or hallucinations.  *Id.*  She was compliant with her medications.  *Id.*  Dr. Roy observed that Plaintiff was alert and oriented, in no acute distress, and she was dressed and groomed casually.  *Id*.  He found that she was cooperative, was in a good mood, and her affect was reactive.  *Id*.  She denied suicidal or homicidal ideations and he found her insight and judgment to be fair.  *Id*.  Dr. Roy continued Plaintiff's medications.  *Id.*

Nurse Shannon of Coleman Psychiatry had a brief nursing visit with Plaintiff on February 18, 2015 and she reported no new conditions or side effects from medications.  Tr. at 2146.  Nurse Shannon observed that Plaintiff was well-groomed, had an average demeanor and a cooperative behavior, her eye contact and activity were average, her speech was clear, she had a full affect, and no delusions, no reports of self abuse, no hallucinations or suicidal or homicidal ideations, and a

logical thought process.  *Id.* at 2143-2144.  Plaintiff reported no impairment in memory, orientation or attention and concentration.  *Id*. at 2144.  The same was reported by Nurse Theodore on July 1, 2015 at a brief nursing visit and by Nurse Shannon at such a visit on October 7, 2015, except that Plaintiff was using a cane and reported that her mother-in-law died.  *Id*. at 2149-2153.

Also on July 1, 2015, Dr. Roy had a recheck with Plaintiff.  Tr. at 2179.  He diagnosed her with bipolar disorder and generalized anxiety disorder.  *Id*.  He noted that Plaintiff reported that she was doing fairly well and she denied symptoms of anxiety, mood swings, irritability, paranoia or hallucinations.  *Id.*  She was compliant with her medications.  *Id.*  Dr. Roy observed that Plaintiff was alert and oriented, in no acute distress, and she was dressed and groomed casually.  *Id.*  He found that she was cooperative, was in an anxious mood, and her affect was guarded.  *Id*.  She denied suicidal or homicidal ideations and he found her insight and judgment to be fair.  *Id*.  Dr. Roy continued Plaintiff's medications.  *Id.*

Dr. Roy had a recheck with Plaintiff on October 7, 2015.  Tr. at 2186.  He diagnosed her with bipolar disorder and generalized anxiety disorder.  *Id*.  He noted that Plaintiff reported that she was doing fairly well and she denied symptoms of anxiety, mood swings, irritability, paranoia or hallucinations.  *Id.*  She was compliant with her medications.  *Id.*  Dr. Roy observed that Plaintiff was alert and oriented, in no acute distress, and she was dressed and groomed casually.  *Id.*  He found that she was cooperative, was in an anxious mood, and her affect was reactive.  *Id*.  She denied suicidal or homicidal ideations and he found her insight and judgment to be fair.  *Id*.  Dr. Roy continued Plaintiff's medications.  *Id.*

Nurse Shannon had another brief nursing visit with Plaintiff on January 6, 2016 and the same information and observations were noted as before.  Tr. at 2157-2158.  On the same date as Nurse Shannon's report, Dr. Roy had a session with Plaintiff to review her condition and medications.  Tr. at 2160, 2193.  He found that Plaintiff was well-groomed, had an average demeanor and a cooperative behavior, her eye contact and activity were average, her speech was clear, she had a guarded affect and an anxious mood, and no delusions, no reports of self abuse, no hallucinations or suicidal or homicidal ideations, and a logical thought process*.  Id.* at 2160-2061, 2193.  Plaintiff reported no impairment in memory, orientation or attention and concentration.  *Id.* at 2161.

On April 20, 2016, Dr. Roy had a recheck with Plaintiff. Tr. at 2199. He diagnosed her with bipolar disorder and generalized anxiety disorder. *Id*. He noted that Plaintiff reported that she was doing fairly well and she denied symptoms of anxiety, mood swings, irritability, paranoia or hallucinations. *Id*. She denied issues with her medications. *Id*. Dr. Roy observed that Plaintiff was alert and oriented, in no acute distress, and she was dressed and groomed casually. *Id*. He found that she was cooperative, was in a good mood, and her affect was reactive. *Id*. She denied suicidal or homicidal ideations and he found her insight and judgment to be fair. *Id*. Dr. Roy continued Plaintiff's medications. *Id*.

July 20, 2016 notes from Nurse Shannon indicate that she had a brief nursing visit with Plaintiff and observed that Plaintiff was well-groomed, had an average demeanor and cooperative behavior, average eye contact and activity, clear speech, a full affect, unremarkable mood, no delusions, reports of self abuse, hallucinations, or suicidal or homicidal ideations, and a logical thought process. Tr. at 2354-2355.

Dr. Roy had a recheck with Plaintiff on the same date and Plaintiff reported that she was doing better. Tr. at 2358. He diagnosed her with bipolar disorder and generalized anxiety disorder. *Id*. Mental status examination showed that Plaintiff was alert and in no acute distress, and she was dressed and groomed casually. *Id*. Dr. Roy observed that Plaintiff had low volume speech, an anxious mood, and a reactive affect. *Id*. He noted that Plaintiff denied hallucinations and suicidal or homicidal ideations, and she had fair insight and judgment. *Id*. He continued Plaintiff's medications. *Id*.

On August 31, 2016, Dr. Roy wrote a letter "To Whom This May Concern" about Plaintiff. Tr. at 2209. He explained that he was Plaintiff's treating psychiatrist and it was his medical opinion that she has been diagnosed with bipolar disorder and generalized anxiety disorder. Id. He opined that, "[s]ince 2013 to present, Tamrae Sprague has been unable to complete an 8 hour work day on a sustained basis without interruptions from psychologically based symptoms." Id. He indicated that Plaintiff needed redirection multiple times during an hour in order to stay on task due to deficits that she had in concentration and attention. *Id*. He opined that "[s]he would be off task 20% or more of a workday." *Id*.

### B.    TESTIMONIAL EVIDENCE

At the ALJ hearing held on October 25, 2016, Plaintiff testified that she was married and her source of income was her husband, who was receiving social security disability benefits.  Tr. at 137.  She indicated that she had a driver's license and would drive to a friend's house, who would then drive her other places.  *Id.* at 138.  She reported that she last worked for one week in 2014 putting bottles on a conveyor and checking them as they went through the process.  *Id.* at 139.  She worked at Wal-Mart as a cashier from 2005 to 2009.  *Id.* at 139.  She reported that she was fired from Wal-Mart for missing too much work due to panic attacks and working too slowly and she had problems getting along with coworkers, which made her work even slower.  *Id.* at 141, 149.  She was also a laborer at a textile plant in 2002 and was fired from that job for working too slow and not being able to go to work because of too many panic attacks.  *Id.* at 140-142.

Plaintiff explained that about twice a month, she has periods of time that she stays in her pajamas for several days at a time and she does not dress or shower.  Tr. at 148-149.  She explained that she sees shadows in the shapes of people sometimes, or kids crying or throwing a ball down her hallway, or she heard a man's footsteps on top of her trailer.  Tr. at 150.  She stated that her medications were helping her with this.  *Id.* at 151.  She also testified that she had panic attacks every day and the thought of going outside and being around a lot of people brings them on, so she limits her contact with the public.  *Id.* at 157-158.  She goes to counseling and she has had panic attacks for the last 20-30 years, although they had gotten worse in the last few years.  *Id.* at 164.

The VE then testified.  Tr. at 164.  The ALJ asked her to assume a hypothetical individual with Plaintiff's age, education and work experience, who had no exertional limitations, but she was limited to:  simple, routine, repetitive with no contact with the general public, work that requires interaction with one to two coworkers and only occasional supervision in a routine work setting that had only occasional changes in the work routine.  *Id.* at 166.  When asked if this hypothetical person could perform Plaintiff's past relevant work, the VE responded that such a person could perform Plaintiff's past relevant work as a laundry worker II, and such a person could perform other jobs, including dishwasher, equipment cleaner, housekeeper, and inspector hand packager, all of which existed in significant numbers in the economy.  *Id.* at 167.

-9-

The ALJ modified the hypothetical individual, assuming the same limitations as the first hypothetical individual, but including a light exertional level, occasional use of left hand controls, occasionally climbing ramps and stairs, never climbing ladders, ropes and scaffolds, occasionally balancing, stooping and crouching, never kneeling and crawling, occasionally reaching overhead with her left arm, frequently handling and fingering with her left hand. Tr. at 167. The VE testified that such an individual could not return to any of Plaintiff's past relevant jobs, but could perform the jobs of inspector hand packager, photocopy machine operator, and unskilled hand gluer. *Id*.

The ALJ then added an assistive device used to ambulate to the prior hypothetical individual and the VE responded that the individual could still perform the inspector hand packager and hand gluer jobs, and could perform bench assembler jobs, such as plastic hospital product assembler. ld. at 168-169. When the ALJ modified the individual to have a sedentary exertional level, the VE indicated that the individual could perform jobs such as document addresser, unskilled final assembler, and inspector positions such as button reclaimer. *Id*. at 169-170.

The VE also responded to questions concerning the ordinary tolerance for absenteeism and being off task and Plaintiff's counsel asked questions as well of the VE. Tr. at 171-173. When counsel asked the VE about the sedentary hypothetical individual who also required redirection multiple times during a work hour to stay on task due to attention and concentration deficits, the VE indicated that no competitive employment would be available. *Id*. at 172-173.

### III.     RELEVANT PORTIONS OF ALJ'S DECISION

On January 13, 2017, the ALJ issued a decision first addressing the prior ALJ decision from 2013 where that ALJ found that Plaintiff had the RFC to perform work at all levels, but limited to simple and routine tasks with no contact with the public, work that required interaction with only one to two coworkers and only occasional supervision, and work in a routine work setting with only occasional changes in the work setting. Tr. at 11. The current ALJ noted that the Appeals Council had affirmed the prior ALJ's decision and upon the current ALJ's review of the law and facts, he found no basis for reopening Plaintiff's prior applications. *Id.* at 11-12.  f

The current ALJ found that Plaintiff had not engaged in substantial gainful activity since January 30, 2013, the alleged onset date, and he found that since then, Plaintiff had the severe

impairments of depression, anxiety, personality disorder, lumbar spine degenerative disc disease, and left upper extremity radial tunnel, carpal syndrome, and lateral epicondylitis.  Tr. at 14.  The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Subpart P, Appendix 1.  *Id.* at 17-19.  After considering the record, the ALJ found that Plaintiff had the RFC to perform light work with the following limitations: simple and routine tasks, no contact with the general public, work requiring interaction with only one or two coworkers and only occasional supervision in a work setting with only occasional changes in the work routine; occasional use of left hand controls; occasionally climbing ramps and stairs; never climbing ladders, ropes or scaffolds; occasionally balancing, stooping and crouching; never kneeling or crawling;  occasionally reaching overhead with her left arm; and frequently handling and fingering with the left hand.  *Id.* at 19.

Based upon Plaintiff's age, education, work experience, the RFC, and the VE's testimony, the ALJ determined that Plaintiff could not perform any past relevant work, but she could perform jobs existing in significant numbers in the national economy, such as inspector/hand packager, photocopy machiner operator, and hand gluer.  Tr. at *27-28.  In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, and she was not entitled to DIB or SSI from January 30, 2013, through the date of his decision.  *Id.* at 28.

## IV.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits.  These steps are:

1.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.    An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.    If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see   20 C.F.R.  § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.     If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.     If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon

the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

## VI.    LAW AND ANALYSIS

In her sole claim of error, Plaintiff asserts that the ALJ's decision should be reversed because he failed to provide good reasons for discrediting the opinion of her treating mental health doctor, Dr. Roy.  ECF Dkt. #12 at 6-11.  For the following reasons, the undersigned recommends that the Court find no merit to Plaintiff's assertion.

An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons"[3] for doing so.  Social Security Rule ("SSR") 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*  If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply

---

[3]  The Court notes that the SSA has changed the treating physician rule effective March 27, 2017.  *See* 20 C.F.R. § 416.920.  The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions.  Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules  and will consider the supportability and consistency factors as the most important factors.

invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010).  The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ).  However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence.  *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th Cir. 2004).  Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion.  *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

In his decision, the ALJ addressed Dr. Roy's opinion.  Tr. at 25-26.  He attributed the opinion "little weight," finding that it was inconsistent with Dr. Roy's own treatment notes and with the record as a whole.  *Id*. at 25.  The ALJ specifically cited to Dr. Roy's November 4, 2014 note in which he stated that since March of 2011, Plaintiff had an unremarkable affect and mood, no anxiety issues, no thinking disorders, and she was alert and oriented.  *Id.*, citing Tr. at 2.  The ALJ further indicated that Dr. Roy wrote that Plaintiff reported difficulty with concentration, but the psychiatric nurse noted much higher level functioning as she reported that Plaintiff was independent in self-care, chores, food preparation, shopping, taking public transportation, attending appointments, compliance with her medications, and financial matters.  *Id*.

In addition to these notes, the ALJ cited to Dr. Roy's other treatment notes in earlier parts of his decision when reviewing the medical evidence and he referred back to these notes when providing support for his decision to attribute Dr. Roy's opinion "little weight."  The ALJ referred to mental health treatment records dated April 9, 2013, July 16, 2013, January 17, 2014, May of 2014, August 20, 2014, November 19, 2014, February 18, 2015, July 2015, October 2015, January 6, 2016, April 20, 2016, and July 20, 2016, which indicated that Plaintiff was doing fairly well,

-14-

denied anxiety, had essentially normal mental status examinations, and her medications were continued. Tr. at 21, citing Tr. at 603-605, 656-664, 786-791, 797-802, 810-821, 920-921, 1291-1297, 1302-1313, 1897-1900, 2143-2156, 2164-2166, 2193-2198, 2206-2208, 2354-2363. The ALJ also cited to the daily living activities of Plaintiff which supported his decision to attribute less than controlling weight to Dr. Roy's opinion, as Plaintiff was able to pay bills, go shopping with friends, and take public transportation. *Id*. at 1662.

Based upon the above, the undersigned recommends that the Court find that the ALJ provided good reasons for attributing less than controlling weight to the opinion of Dr. Roy. The ALJ sufficiently cited to Dr. Roy's own treatment notes, his mental status examinations, and Plaintiff's daily living activities in order to adequately support his decision. While some of the examinations show issues with anxiety and depression, the plan of treatment was continued and the standard of review is whether the ALJ complied with the legal standards and whether substantial evidence supports his determination. The undersigned recommends that the Court find that the ALJ did comply with the treating physician rule and substantial evidence supports his decision.

## VII.  RECOMMENDATION AND CONCLUSION

For the above reasons, the undersigned recommends that the Court AFFIRM the decision of the ALJ and DISMISS Plaintiff's complaint in its entirety WITH PREJUDICE.


Date: May 31, 2019                      */s/George J. Limbert*
                                         GEORGE J. LIMBERT
                                         UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

-15-